United States Courts
Southern District of Texas
FILED
*November 10, 2026*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO.: **4:26-cr-721** |
| | § | |
| v. | § | |
| | § | |
| ALLISON VILLEGAS, | § | |
| Defendant | § | |
| | § | |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information:

## Introduction

*The Medicare Program*

1. Medicare was a federal health care program administered by the Centers for Medicare and Medicaid Services ("CMS") that provided benefits to individuals aged 65 or older or with qualifying disabilities ("beneficiaries").

2. Medicare Part D, established by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and effective January 1, 2006, provided prescription drug coverage through private insurance plans funded by CMS.

3. Pharmacies participated in Medicare Part D through agreements with Part D Plans, Pharmacy Benefit Managers ("PBMs"), or Pharmacy Services Administrative Organizations ("PSAOs"). PBMs administered prescription drug benefits and processed reimbursement claims on behalf of Part D Plans.

4. CMS assigned each pharmacy a National Provider Identifier ("NPI"), which the pharmacy used to submit reimbursement claims. Pharmacies could seek reimbursement only for

medications legitimately prescribed and actually dispensed.

5. After dispensing a prescription, a pharmacy submitted a claim using its NPI and the beneficiary's Part D identification information. The Part D Plan or PBM reviewed the claim and, if approved, reimbursed the pharmacy directly or through a PSAO. Pharmacies could also submit out-of-network claims, generally at lower reimbursement rates.

6. Medicare and Medicare Part D Plan sponsors were "health care benefit programs" affecting commerce within the meaning of 18 U.S.C. § 24(b).

**Commercial Insurance**

7. Commercial insurers provided health care benefits to enrolled individuals ("members") and constituted "health care benefit programs" affecting commerce under 18 U.S.C. § 24(b).

8. Commercial prescription drug plans were offered by insurers, employers, and other private entities and administered through PBMs. Pharmacies submitted prescription claims to the applicable plan or PBM for reimbursement.

9. Pharmacies could seek reimbursement from commercial insurers only for medications legitimately prescribed and actually dispensed.

**Relevant Entities, Individuals, and Financial Accounts**

10. Defendant Allison Villegas **(VILLEGAS)** was a resident of Harris County and the owner of Dilley Pharmacy, LLC ("Dilley") from in or about June 2024 through February 2025.

11. Dilley was a limited liability company formed under the laws of Texas. Dilley had physical premises in 801 FM-117 Dilley, Texas 78017 where it purportedly operated as a pharmacy.

**12.** On or about May 28, 2024, **VILLEGAS** was added as the sole authorized

signatory on Dilley's Bank of Texas checking account ending in 8613.

## COUNT ONE

**Conspiracy to Defraud the United States, to False Statements Relating to Health Care Matters (18 U.S.C. § 371)**

13. Paragraphs 1 through 12 of this Information are incorporated by reference as if fully set forth herein. Between June 2024 through February 2025, in the Southern District of Texas, the defendant,

**ALLISON VILLEGAS,**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to defraud the United States and to commit offenses against the United States, to wit: making false statements relating to health care matters contrary to Title 18, United States Code Section 1035.

### Purpose of the Conspiracy

The purpose of the conspiracy was for **ALLISON VILLEGAS** to wrongfully enrich herself and others by facilitating Dilley's submission of false and fraudulent claims to health care benefit plans for prescription drugs that it did not dispense and which were not legitimately prescribed. Over the course of the conspiracy, **ALLISON VILLEGAS** and her co-conspirators facilitated Dilley's submission of claims for, and receipt of approximately $569,000 from health care benefit programs.

### Overt Acts

14. In furtherance of the conspiracy, and to achieve its object and purpose, the Defendant and her co-conspirators committed and caused to be committed at least one of the following overt acts:

a. On or about the dates specified below, in the Southern District of Texas and elsewhere, **ALLISON VILLEGAS** and her co-conspirators submitted and caused to be submitted the following false and fraudulent claims to Medicare for payment for prescription medications that were not legitimately prescribed and that Dilley did not actually dispense to Medicare beneficiaries:

b. On or about April 2024, co-conspirators directed **ALLISON VILLEGAS** to put Dilley Pharmacy in her name in exchange for receiving $25,000.

c. Between June 2024 through February 2025, Dilley's bank accounts of Texas Bank and Bank of America received over $569,000 from health care benefit plans for prescription medications that were not legitimately prescribed, and that Dilley never dispensed.

d. Between June 2024 through February 2025, **ALLISON VILLEGAS** received $11,500 dollars for her role in the scheme as a straw owner of Dilley.

All in violation of Title 18, United States Code, Section 371.

AARON REITZ

United States Attorney
Southern District of Texas

By: *Tina Ansari*
Tina Ansari
Alexander Alum
Assistant United States Attorneys